## IN THE UNITED STATES DISTRICT COURT FOR
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNIVERSAL ELECTRIC CORPORATION,

     Plaintiff,

v.

MARK H. BALDWIN, BALDWIN
TECHNOLOGIES, INC., BUSWAY
SOLUTIONS, LLC, DIRECT POWER
TECHNOLOGIES, INC. and ENGINEERED
PRODUCTS CO. d/b/a PDU CABLES.

     Defendants.

Civil Action No. _____

## COMPLAINT

Plaintiff, Universal Electric Corporation, by and through its undersigned counsel, files the following Complaint against Defendants Mark H. Baldwin, Baldwin Technologies, Inc., Busway Solutions, LLC, Direct Power Technologies, Inc., and Engineered Products Co. d/b/a PDU Cables.

## INTRODUCTION

Plaintiff Universal Electric Corporation ("UEC") is a family-owned company that designs and manufactures products for the electrical power distribution industry. This case centers on the wrongful competitive actions of Defendant Mark H. Baldwin ("Baldwin"). Baldwin is the President of Baldwin Technologies, Inc. ("BTI"), a Member of Busway Solutions, LLC ("Busway Solutions"), and the President of Direct Power Technologies, Inc. ("DPTI"). He is the driving force behind each. BTI, acting through Baldwin, was employed as a sales representative for UEC for over fifteen (15) years. Within three days of Baldwin's termination as a sales representative, he filed a provisional U.S. Patent Application relating to the very same

products that he represented for UEC, but he filed in the name of his company, Busway Solutions.  Additionally, Baldwin began a campaign to undermine marketplace confidence in UEC products through false and misleading advertising.  In doing so, Baldwin worked through his companies, BTI, Busway Solutions, and DPTI, and worked in concert with Engineered Products Co. d/b/a PDU Cables ("PDU Cables"), an independent company.  Defendants' campaign falsely contended to UEC's existing and potential customers that (1) UEC products are unsafe and (2) Defendants' products are safer.  Neither contention is true.  This conduct is actionable.

## THE PARTIES

1.     Plaintiff Universal Electric Corporation is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in the Commonwealth of Pennsylvania at 168 Georgetown Road, Canonsburg, Pennsylvania 15317.

2.     Defendant Mark H. Baldwin, an adult individual, is a citizen of the State of Maryland, residing at 907 Soaring Eagle Court, Davidsonville, Maryland 21035.

3.     Defendant BTI is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in the State of Maryland at 4801 Tesla Drive, Suite G, Bowie, Maryland 20715.

4.     Upon information and belief, Baldwin is, and at all times relevant hereto, has been (a) the President of BTI, (b) either the sole owner or largest ownership interest-holder in BTI, and (c) the active, moving force for BTI with respect to the unlawful conduct described herein.

5.     Defendant Busway Solutions is a limited liability company organized and existing under the laws of the State of Maryland, with its principal place of business in the State of Maryland also at 4801 Tesla Drive, Suite G, Bowie, Maryland 20715.

2

6.     Upon information and belief, there are no individual members of Busway Solutions who are citizens of the Commonwealth of Pennsylvania, and there are no juristic members of Busway Solutions that are organized or exist under the laws of the Commonwealth of Pennsylvania or maintain a principal place of business in the Commonwealth of Pennsylvania.

7.     Upon information and belief, Baldwin is, and at all times relevant hereto, has been (a) a Member of Busway Solutions and (b) the active, moving force for Busway Solutions with respect to the unlawful conduct described herein.

8.     Defendant DPTI is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in the State of Maryland also at 4801 Tesla Drive, Suite G, Bowie, MD 20715.

9.     Upon information and belief, Baldwin is, and at all times relevant hereto, has been (a) the President of DPTI, (b) either the sole owner of DPTI or the largest ownership interest-holder in DPTI, and (c) the active, moving force for DPTI with respect to the unlawful conduct described herein.

10.     Defendant PDU Cables is a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business in the State of Minnesota at 5401 Smetana Drive, Minnetonka, Minnesota 55343.

11.     Baldwin, BTI, Busway Solutions, DPTI, and PDU Cables are hereinafter referred to collectively as "Defendants."

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendants pursuant to 42 Pa. C.S. § 5322 because each has, individually and in concert with the others, (a) transacted business in the Commonwealth of Pennsylvania, (b) offered to and contracted to supply goods or services in the

Commonwealth of Pennsylvania, and/or (c) caused harm or tortious injury in the Commonwealth of Pennsylvania by an act or omission outside of the Commonwealth of Pennsylvania.

13.     This Court has subject matter jurisdiction over UEC's claims against Baldwin, BTI, Busway Solutions, DPTI and PDU Cables within the meaning of 28 U.S.C. §1332 because: (1) complete diversity of citizenship exists among the parties; and (2) the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events and omissions giving rise to UEC's claims against Baldwin, BTI, Busway Solutions, DPTI, and PDU Cables occurred and/or continue to occur in this District.

## **FACTUAL BACKGROUND**

I.      **BTI, acting through its President Baldwin, served as a sales representative of UEC for more than fifteen (15) years and was given access to UEC's confidential trade information.**

15.     UEC is a manufacturer of power distribution systems.  It services the data center, retail, health care, higher education, and industrial markets across the United States.  Its products include the STARLINE® Track Busway and STARLINE® Plug-In Raceway.

16.     Among UEC's STARLINE® Track Busway products are a line of products known as the "T5 Series."

17.     UEC's STARLINE® T5 Series Track Busway and STARLINE® Plug-In Raceway products support vital assets of its customers.  These include, *inter alia*, data centers and dedicated server rooms that store mission-critical information and are relied upon by UEC's customers for their safe and effective day-to-day operations.

18.     The safety and security of UEC's STARLINE® T5 Series Track Busway and STARLINE® Plug-In Raceway products, and their protection of UEC's customers' mission-critical equipment, are very important to existing and prospective customers.

19.     To sell its products, UEC maintains a network of sales representatives, each responsible for a certain geographic region.   On behalf of UEC, they maintain UEC's relationships with existing customers, and build relationships with new customers in their respective region.

20.     In order to market UEC products effectively, each sales representative is given access to UEC's sensitive, confidential trade information, including without limitation, information related to the design, safety, efficacy, pricing and marketing of UEC products, as well as UEC's special business techniques, market analysis forms, software programs, customer lists, and manufacturing process.

21.     Because of the confidential nature of this information, UEC requires each sales representative to enter into a Sales Agreement with UEC concerning restrictions on the use and disclosure of such information, and detailing each sales representative's duties and responsibilities to UEC.

22.     On or about March 1, 1999, UEC and BTI entered into a Sales Agreement (the "1999 Agreement").   UEC appointed BTI as its exclusive authorized sales representative in the State of Maryland, the Commonwealth of Virginia, and the District of Columbia for its STARLINE® Plug-In Busway product.   A true and correct copy of the 1999 Agreement is attached hereto as **Exhibit A**.

23.     Pursuant to the 1999 Agreement, BTI agreed to "hold in the strictest confidence during the term of this Agreement, and at all times thereafter, any and all information of

confidential nature obtained regarding [UEC] business or affairs, including but not limited to customer list[s], customer[] prices, data regarding the[] design and/or methods of manufacture of [UEC] Products." Exh. A, ¶ 5.

24.      Pursuant to the 1999 Agreement, BTI further agreed to "not disclose in any manner directly or indirectly such information to any entity, person, partnership, or [c]orporation." Exh. A, ¶ 5.

25.      On or about March 1, 2013, UEC and BTI entered into a new Sales Agreement (the "2013 Agreement"), pursuant to which BTI continued to serve as a UEC sales representative in the State of Maryland, the Commonwealth of Virginia, and the District of Columbia for the STARLINE® Track Busway product and the STARLINE® Plug-In Raceway product.  A true and correct copy of the 2013 Agreement is attached hereto as **Exhibit B**.

26.      As is apparent, the 2013 Agreement refers to Baldwin and his company, BTI, interchangeably at times.  *Id.* at ¶¶ 2D, 5, 6B, 7, 8.

27.      The 2013 Agreement provided, in pertinent part, that:

**4.      Trade Secrets; Competitive Merchandise; Restrictive Covenant.**

A.      With respect to [UEC's] special business techniques, market analysis, forms, software programs, customer list[s], and all other information regarding manufacture or distribution of [UEC's] products, [BTI] acknowledges that all such information: (i) belongs to [UEC]; (ii) constitutes specialized and highly confidential information not generally known in the industry; [and] (iii) constitutes trade secrets of [UEC].   Accordingly, [BTI] recognizes and acknowledges that it is essential to [UEC] to protect the confidentiality of this trade information.

B.      [BTI] agrees to act as a [t]rustee of [UEC's] confidential trade information and will hold such information in trust and confidence for [UEC's] sole and exclusive use and benefit.

C.      During the term hereof and for thirty-six (36) months thereafter, [BTI] shall not disclose such confidential trade information to any person, firm, association, or other entity for any reason or purpose whatsoever, unless such

information has already become common knowledge or unless [BTI] is required to disclose the information by judicial process.

        D.    During the term of this Agreement, [BTI] shall not, directly or indirectly, enter into, or in any manner take part in, any business, profession, or other endeavor which competes with [UEC] in the sale of its merchandise (including any products that [UEC] may add to its product line during the term of this Agreement).  [BTI] shall not so compete either as an employee, agent, independent contractor, owner, or otherwise.

Exh. B, ¶ 4.

28.    The 2013 Agreement expressly "supersedes all previous contracts between [UEC] and [BTI]." Exh. B, p. 1.

29.    On or about February 28, 2014, UEC notified BTI that it was terminating the 2013 Agreement, effective March 30, 2014.  A true and correct copy of the February 28, 2014 Termination Letter is attached hereto as **Exhibit C**.

30.    In connection with UEC's termination of BTI, Baldwin raised issues with UEC regarding the amount of commissions owed to BTI pursuant to the 2013 Agreement.

31.    On or about July 8, 2014, UEC and BTI entered into a Settlement Agreement and Release (the "2014 Agreement") to "settle any disputed amounts due to BTI pursuant to the [March 1, 2013] Sales Agreement, including without limitation, certain commissions to be paid by UEC to BTI on orders which were taken, but not shipped[,] during the 30 day notice period prior to termination."  A true and correct copy of the 2014 Agreement is attached hereto as **Exhibit D**.

32.    Pursuant to the 2014 Agreement, UEC and BTI agreed "not to make disparaging or negative comments regarding the other party hereto to any person or entity." Exh. D, ¶ 3.

33.    The 2014 Agreement also provides, *inter alia*, that "UEC and BTI were parties to that certain Sales Agreement executed in 2013 ('Sales Agreement') whereby BTI served as a

Sales Representative in the Territory.  All capitalized terms used herein are as defined in the Sales Agreement." Exh. D, Preamble, ¶ A.

## II.    Baldwin, acting as President of BTI, improperly competed with UEC by using UEC's confidential trade information to file patent applications in the name of Busway Solutions.

34.    On information and belief, BTI, through the actions of its President, Baldwin, misused the confidential trade information of UEC to allow Defendants to improperly compete with UEC.

35.    This misuse took place within the thirty-six (36) month period after the March 30, 2014 termination of the 2013 Agreement (i.e., within the period up to March 30, 2017), and has continued thereafter.

36.    On April 2, 2014, just three days after the effective date of the termination of the 2013 Agreement, and without UEC's knowledge or consent, Baldwin filed provisional U.S. Patent Application No. 61/974,184, titled "BUSWAY OUTPUT BOX GUIDE/INHIBITOR SYSTEM FOR INSERTION AND REMOVAL OF A BUSWAY OUTPUT BOX," with the U.S. Patent and Trademark Office ("USPTO").[1]  Baldwin filed in his individual name and in the name of Busway Solutions, but not in UEC's name.

37.    On March 10, 2015, Baldwin filed non-provisional U.S. Patent Application No. 14/644,199, titled the same as the '184 provisional application.  A true and correct copy of U.S.

---

[1] "Provisional" U.S. patent applications do not get examined by the USPTO and therefore cannot mature into a patent.  Instead, they are only used to secure an early priority filing date, and provide inventors with up to one year to file a "non-provisional" application and maintain the earlier filing date.  Under 37 CFR 1.211(b), provisional patent applications are kept confidential by the USPTO.  In contrast, non-provisional patent applications are examined by the USPTO and can result in an issued patent.  Under 37 CFR 1.211(a), non-provisional applications are published by the USPTO 18 months after they are first filed.

Patent Application No. 14/644,199 is attached hereto as **Exhibit E**. The non-provisional '199 application is based on and claims priority to the provisional '184 application.

38.     The '199 application identifies Baldwin as the "Inventor," and Busway Solutions as the "Owner" or "Assignee." Exh. E. This application was first made public by the USPTO's publication of it on October 8, 2015.

39.     On July 5, 2016, U.S. Patent No. 9,385,517 (the "'517 Patent") issued to Busway Solutions, as assignee of Baldwin, based on (and claiming priority to) the non-provisional '199 application and the provisional '184 application. A true and correct copy of the '517 Patent is attached hereto as **Exhibit F**.

40.     The '517 Patent has fourteen (14) patent claims, including, *inter alia*, a claim for "a guide system for enhancing safety in busway bar power distribution systems." The '517 Patent cites an alleged need "for improved power distribution power heads, mast heads, plug-in units, or electrical power outlet units," the same products Baldwin sold for fifteen years for UEC.

41.     Upon information and belief, in applying for and obtaining the '517 Patent, BTI, through Baldwin and for the benefit of Busway Solutions, disclosed UEC's confidential trade information, including information regarding the design, safety and efficacy of UEC's STARLINE® products.

42.     In applying for and obtaining the '517 Patent, BTI, through Baldwin and for the benefit of Busway Solutions, cited alleged safety issues regarding UEC's STARLINE® products, and Baldwin contended that his products were improvements that overcame the alleged STARLINE® safety issues. Said safety issues were and are untrue and unsubstantiated.

43.     Since the provisional '184 application, the original filing that led to the '517 Patent, was filed just three days after UEC's March 30, 2014 termination date of Baldwin/BTI,

UEC alleges that, upon information and belief, Baldwin did not first commence inventing and working on the inventions disclosed the '184 application between his March 30, 2014 termination date and the April 2, 2014 USPTO filing date.

44.    To the contrary, UEC alleges, on information and belief, that BTI, through Baldwin, and for the benefit of Busway Solutions, must have started working on inventions covered by the '517 Patent during the term of the 2013 Agreement, in violation of paragraphs 4C and 4D thereof.

45.    UEC did not and could not learn of Baldwin and BTI making this filing any earlier than October 8, 2015, when the USPTO first published it.

46.    On June 17, 2015, Baldwin filed a second provisional U.S. Patent Application, No. 62/180,966, titled "SYSTEMS, METHODS, AND APPARATUS USEFUL FOR BUSWAY POWER DISTRIBUTION," with the USPTO.

47.    On June 17, 2016, Baldwin filed non-provisional U.S. Patent Application No. 15/185,816, titled the same as the provisional June 17, 2015 application.  A true and correct copy of the '816 non-provisional application is attached hereto as **Exhibit G**.  The non-provisional '816 application is based on (and claims priority to) the provisional '966 application.

48.    The non-provisional '816 application identifies Baldwin and Eric N. Shatzer as the "Inventors" and Busway Solutions as the "Owner" or "Assignee."  Exh. G.  Baldwin filed in his individual name and in the name of Busway Solutions, but not in UEC's name.

49.    The non-provisional '816 application includes twenty (20) patent claims, again citing an alleged need "for improved power distribution power heads, mast heads, plug-in units, or electrical power outlet units" as a basis for patentability, once again the same products that Baldwin sold for fifteen years at UEC.  Exh. G.

10

50.     Upon information and belief, in filing the non-provisional '816 application, BTI, through Baldwin and for the benefit of Busway Solutions, disclosed UEC's confidential trade information, including information regarding the safety and efficacy of UEC's STARLINE® products.

51.     UEC did not and could not learn of Baldwin and BTI making this filing any earlier than December 22, 2016, when the USPTO published it.

52.     In filing the non-provisional '816 application, BTI, through Baldwin and Busway Solutions, cited alleged safety issues regarding UEC's STARLINE® products and contended that Baldwin's products were improvements that overcame the alleged STARLINE® safety issues.  Said safety issues were and are untrue and unsubstantiated.

53.     On May 19, 2017, the USPTO rejected 19 out of 20 of Baldwin's claims in the non-provisional '816 application.  A true and correct copy of the May 19, 2017 USPTO Office Action is attached hereto as **Exhibit H-1**.

54.     One of Baldwin's claimed inventions was rejected because it was determined to be ***the same invention*** as is shown in UEC's prior U.S. Patent No. 8,664,530 to Ross (the "Ross '530 Patent"), while others were determined to be largely the same as the inventions described in the Ross '530 Patent.  A true and correct copy of the Ross '530 Patent is attached hereto as **Exhibit H-2**.  C*ompare e.g.* Exh. H-1, p. 5, claim 3 ("anticipation" rejection under Section 102 of the Patent Act means that the same invention preceded – anticipated – the invention being claimed in a patent application) with pp. 7-11, 13-15 ("obviousness" rejections, meaning that the invention Baldwin is trying to patent is an obvious variation of the inventions in the Ross '530 Patent), and Exh. H-2 (the Ross '530 Patent).

55.     In addition, most of Baldwin's claims in this same '816 application were rejected as being obvious in view of a second UEC patent, U.S. Patent No. 9,379,502 to Davidson (the "Davidson '502 Patent").  A true and correct copy of the Davidson '502 Patent is attached hereto as **Exhibit H-3**.  *See e.g.* Exh. H-1 pp. 7-13, discussing rejections, and Exh. H-3 (the Davidson '502 Patent).

### III.    Baldwin, BTI, Busway Solutions, DPTI, and PDU Cables acted in concert to make false, misleading and disparaging remarks regarding UEC Products.

56.     In an effort to steal existing and potential UEC customers, Baldwin designed and implemented a campaign of false and misleading advertising with respect to the safety of UEC products.

57.     Baldwin knows from his years working as a sales representative with UEC that a primary concern of existing and prospective UEC customers is the safety of their employees and the security of their equipment for which UEC products supply power.

58.     Baldwin also knows that the UEC products have a long history of safe and secure usage by UEC's customers.

59.     Despite this knowledge, Baldwin created and implemented a campaign to undermine the confidence of UEC's actual and prospective customers in the safety and security of UEC's STARLINE® products by advertising, through his other companies, BTI, Busway, and DPTI, all of which worked in concert with PDU Cables, that UEC's products are not safe for the customers' employees or equipment.

60.     On or about March 15, 2017, PDU Cables, the self-described "leading manufacturer and supplier of power-distribution cable assemblies in North America," announced that it had "undertaken exclusive distribution of Busway Solutions tap-off boxes (the "Busway

Solutions product")."  A true and correct copy of the March 15, 2017 Announcement is attached hereto as **Exhibit I**.

61.    In its March 15, 2017 Announcement, PDU Cables stated that "Busway Solutions has designed a safer and superior tap-off box to the standard OEM plug-in's offered for 'U' shaped open channel track busway, ***like UEC's Starline's T5 series busway track system***."  *Id.* (emphasis added).

62.    PDU Cables' website further describes the Busway Solutions product:

**Busway Solutions Tap-Off Boxes**

Replacing or adding to your facilities power load requirements?  Tired of paying a premium price and waiting weeks for proprietary OEM tap-off boxes to be delivered?  PDU Cables is happy to offer a better alternative.  ***PDU Cables is now the exclusive distributor of Busway Solutions tap-off boxes.  Busway Solutions has engineered a series of superior tap-off boxes designed specifically to accommodate the Starline T5 Track Busway system***.

A true and correct copy of the relevant portions of PDU Cables' website is attached hereto as **Exhibit J** (emphasis added).

63.    PDU Cables' website also asserts that the Busway Solutions product is compatible with UEC's STARLINE® products, explaining that the Busway Solutions Product can be "used to distribute (tap-off) power from 'U' shaped open channel busway track systems including the Starline T5 series, B250, B400, B800 and B1200 track busway."  *Id.*

64.    On information and belief, the Busway Solutions products being referenced are covered by one or more claims of the '517 Patent and the '816 application.

65.    PDU Cables' website touts Busway Solutions' '517 Patent and '816 application, noting that the Busway Solutions product features a "[p]atented Inhibitor (directional indicator)" which "assures proper de-installation to prevent plug mast damage," and "patent pending dual mounting tabs for safer more secure connection."  Exh. J.

66.     PDU Cables also advertises that Busway Solutions offers an improved warranty compared to UEC's STARLINE® products, noting that "[u]nlike OEM busway tap-off boxes [OEM referring to Original Equipment Manufacturers – UEC] which offer only a one-year warranty, Busway Solutions offers a full two-year warranty on its tap-off boxes. Busway Solutions believes so strongly in its superior design, materials and manufacturing of its tap-off boxes, it is willing to double the warranty you'll find on those other OEM tap-off boxes." Exh. J.

67.     The PDU Cables website makes a number of contentions regarding UEC and its STARLINE® products, including that:

a.      "Tap-off box masts have always been a common culprit in busway track system failures";

b.      "The Busway Solutions product improvement redesign resolved these and other manufacturing weaknesses resulting in a tap-off box that delivers a more robust, safe and secure fault free load delivery";

c.      "While visually you'd be hard-pressed to tell the difference between the Busway Solutions tap-off boxes from other tap-off boxes, significant improvements in design and quality of materials have resulted in a patented, ETL approved tap-off box that sets a new industry standard for excellence";

d.      "Busway Solutions tap-off boxes address one of the most common complaints of OEM tap-offs, difficult to install";

e.      "If the head is misaligned, it isn't uncommon to snap off the head during rotation";

f.      "When older style tap-off boxes fail it is typically because of the electrical mast"; and

g.      "If they survive the initial setup, and general 'man-handling' during installation, the use of only a single, or more commonly non-use at all of the, mounting taps result in excessive and uneven pressure on the electrical mast leading the mast to serve as the mechanical support for the tap-off box, with device failure a not uncommon occurance (sic)."

Exh. J.  These contentions are false and disparaging.

68.     Over the past several months, Defendants have produced a steady drumbeat of contentions in the market that UEC's products are unsafe, while their "Busway Solutions" branded products are supposedly safer.  A true and correct copy of an example of the same, a PDU Cables' and Busway Solutions' brochure, is attached hereto as **Exhibit K**.  In so doing, Defendants have disparaged UEC and its products.

69.     PDU Cables also issued a press release on February 25, 2017 making many of the same contentions regarding UEC and its STARLINE® products:

a.      "Tap-off box masts have always been a common culprit in busway track system failures";

b.      "The Busway Solutions product improvement redesign resolved these and other manufacturing weaknesses resulting in a tap-off box that delivers a more robust, safe and secure fault free load delivery";

c.      "The re-engineered plug mast with larger paddle surface area, has been designed for increased safety, superior performance and easier installation"; and

d.      "While visually you'd be hard-pressed to tell the difference between the Busway Solutions tap-off boxes from other tap-off boxes, significant improvements in design and quality of materials have resulted in a patented, ETL approved tap-off box that sets a new industry standard for excellence."

A true and correct copy of PDU Cables' press release is attached hereto as **Exhibit L**.  These contentions are false and disparaging.

70.     None of the alleged defects in UEC's STARLINE® products really exist.

71.     Upon information and belief, Baldwin, on his own behalf and working in concert with one or more Defendants, was involved in crafting at least some, if not all, of this content on the PDU Cables website and press release.  Baldwin intentionally placed false statements about UEC's products into the market.

72.     To the contrary, Baldwin knows well from his fifteen (15) years as a sales representative for UEC, selling these very products, that they are safe and that customers who use them do not jeopardize the security of their property, and that the UEC products do not have a history of continuous or recurring defects or of customer dissatisfaction with their performance.

73.     PDU Cables sent out an email advertisement on June 7, 2017 stating as follows: "Because Busway Solutions believes so strongly in its superior redesigned tap-off boxes, they decided to offer a two-year warranty on both the tap-off box and the section of Starline T5 busbar it is plugged into."  A true and correct copy of the June 7, 2017 email advertisement is attached hereto as **Exhibit M**.

74.     PDU Cables' and Busway Solutions' representation that it will offer a warranty on UEC's STARLINE® T5 busbar is unauthorized by UEC.  The use of Busway Solutions' products with UEC's products actually will void UEC's customers' warranties.  A true and correct copy of the relevant section of UEC's customer warranty is attached hereto as **Exhibit N**.

75.     Busway Solution's '517 Patent references "safety" 41 times. The following are examples in the '517 Patent of where Baldwin's alleged invention made improvements over the UEC T5 line of products:

a.      "In recent years, the power distribution industry and the associated market have seen significant increases in the use of busway bar systems, implementations and components for power distribution in various applications. A growing market segment deals with meeting the extensive power distribution requirements for the many and varied electronic and electrical system components that are installed in large data centers. Flexibility in configurations and installations for the electrically-driven and/or powered electronic components in these data centers led to a requirement for flexible, and on-site adaptable, power distribution systems that are easily reconfigurable, often by non-licensed end-user personnel, to place the installed electrical power source receptacles (output boxes) where they are needed without loose wiring being hazardously routed throughout the data center or in any portion thereof." Ex. F, at col. 1, lines 27-42.

b.  "In embodiments, the disclosed schemes may provide solid structures and/or labeling that substantially eliminate the possibility for improper over rotation of the rotational style output boxes in the insertion processes and/or improper incorrect directional rotation of the output boxes in the removal processes in support of a safer working environment." *Id*. at col. 4, lines 25-30.

c.  "The disclosed embodiments are intended, among other objectives, to provide a safer operating environment in which power distribution is facilitated via a busway bar power distribution system by substantially limiting the potential for electrocution/arc flash and equipment destruction hazards associated with damage to a rotational style output box or power head that may be produced by rotating the rotational style output box or power head in a 'wrong' direction during a removal of the output box or power head from the busway bar." *Id*. at col. 6, lines 25-34.

76.  Busway Solutions' U.S. Patent Application No. 15/185,816 makes similar claims that it solves serious safety issues in UEC's T5 line of products:

a.  "A mast head and take-off device power head having enhanced safety features may be configured to minimize a risk of improper or unsafe installation or removal of the power head or plug-in unit in or from the busway bar power delivery system. For example, some busway systems may be configured to include or accommodate a busway plug-in inhibitor system or component for rotational take-device or output box units. An inhibitor system may include a structural feature that inhibits over-rotation or improper rotation, or may include a system for alerting or warning a user about the potential, likelihood, or occurrence of improper rotation of a power head or paddle during removal of the power head from the busway bar that is under load, which can result in property damage and personal injury." Ex. G at ¶ 37.

b.  "The need for easier, secure, and safe installation may be addressed and systems enhanced through take-off device configurations in accordance with embodiments disclosed herein." *Id*. at ¶ 38.

77.  In addition to using PDU Cables as the exclusive distributor of the Busway Solutions product, Baldwin is actively marketing the Busway Solutions product to end-users/customers, through DPTI.

78.  Baldwin, BTI, Busway Solutions, and DPTI have made false and misleading statements to at least one end-user/customer in an attempt to divert business from UEC, again by

17

citing unsubstantiated safety issues regarding UEC's STARLINE® products.   Specifically,

Baldwin, acting on behalf of DPTI, made the following statements to a customer:

a.      "[S]tarline requires installation of a security Bolt that requires the operator to place this up into a hot busway exposing the operator to injury, or a cam action";

b.      "In most cases the security bolt is has not been installed and this leads to potential stress to the mast, and a heavy loading to the electrical stabs within the Starline Mast";

c.      "Notice how little of the conductor [of the UEC product] is touching the Joint Kit. Results can be catastrophic"; and

d.      "Twisting the [UEC] devices in the wrong direction can also lead to arc flash. Removing distribution devices without opening the breaker can also lead to arc flash incidents.  This [UEC's product] is simply an unsafe approach."

A true and correct copy of DPTI's statements are attached hereto as **Exhibit O**.

79.      At the time Baldwin made these contentions through DPTI, Baldwin knew that

they were false.

80.      Upon information and belief, Baldwin, acting through DPTI, intentionally made

these false statements in an effort to steal a prospective customer from UEC.

81.      UEC's pricing information, as with all "information regarding manufacture or

distribution of [UEC's] products," constitutes confidential trade information.

82.      UEC's pricing information was only known to Baldwin and BTI by virtue of

Baldwin's time as a UEC sales representative through March 30, 2014.

83.      PDU Cables and Busway Solutions are selling the Busway Solutions product for

the exact same price for which UEC sells its STARLINE® products.

84.      Upon information and belief, BTI and Baldwin improperly disclosed UEC's

pricing information to Busway Solutions and PDU Cables.

<u>COUNT I</u>
**FALSE ADVERTISING - VIOLATION OF § 43(A) OF THE LANHAM ACT,**
**15 U.S.C. § 1125(A)**

**UNIVERSAL ELECTRIC CORPORATION v. MARK H. BALDWIN, BALDWIN**
**TECHNOLOGIES, INC., BUSWAY SOLUTIONS, LLC, DIRECT POWER**
**TECHNOLOGIES, INC., and ENGINEERED PRODUCTS CO. d/b/a PDU CABLES**

85.    UEC hereby incorporates the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

86.    Defendants have made, and are continuing to make, literally false statements of fact regarding (a) the Busway Solutions products and (b) UEC's STARLINE® products.

87.    In the alternative, Defendants have made substantially misleading statements regarding the same, in advertisements, on websites, in patent applications and through direct communications with customers, as described *supra*.

88.    Upon information and belief, Baldwin directed, controlled, ratified, participated in, and/or was the active, moving force behind the actions of BTI, Busway Solutions, and DPTI in creating and implementing this false and misleading advertising campaign against UEC.

89.    Upon information and belief, Defendants intentionally set out to deceive UEC's existing and prospective customers with respect to the safety of UEC's STARLINE® products.

90.    Upon information and belief, the deliberate conduct of Defendants is egregious in nature.

91.    In the alternative, Defendants' false or misleading statements have the tendency to deceive a substantial portion of the intended audience of customers.

92.    Upon information and belief, Defendants acted in active concert or participation with each other to prepare and disseminate false and misleading information regarding the

Busway Solutions product and UEC's STARLINE® products and, therefore, are jointly and severally liable to UEC.

93.     Defendants' false or misleading statements are material in that they are likely to influence purchasing decisions.

94.     The Busway Solutions products travel in interstate commerce.

95.     Defendants' false and/or misleading statements have proximately caused UEC to suffer irreparable harm and incur damages, including without limitation damage to its reputation, and Defendants have wrongfully profited from such false and misleading statements.

WHEREFORE, Plaintiff Universal Electric Corporation respectfully requests that this Court enter Judgment in its favor on Count I and against Defendants Mark H. Baldwin, Baldwin Technologies, Inc., Busway Solutions, LLC, Direct Power Technologies, Inc., and Engineered Products Co. d/b/a PDU Cables, and grant Universal Electric Corporation the relief set forth in its Prayer for Relief.

**COUNT II**
**BREACH OF CONTRACT**
**(2013 AGREEMENT)**

**UNIVERSAL ELECTRIC CORPORATION v. BALDWIN TECHNOLOGIES, INC.**

96.     UEC hereby incorporates the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

97.     The 2013 Agreement is a valid, binding, and enforceable contract between UEC and BTI.

98.     Pursuant to the 2013 Agreement, BTI agreed to "act as a [t]rustee of [UEC's] confidential trade information and [to] hold such information in trust and confidence for [UEC's] sole and exclusive use and benefit." Exh. B, ¶ 4.

99.     Pursuant to the 2013 Agreement, BTI agreed that "[d]uring the term hereof and for thirty-six (36) months thereafter, the Sales Representative shall not disclose such confidential trade information to any person, firm, association, or other entity for any reason or purpose whatsoever, unless such information has already become common knowledge or unless the Sales Representative is required to disclose the information by judicial process."  Exh. B, ¶ 4.

100.    Pursuant to the 2013 Agreement, BTI agreed that, during the term of the 2013 Agreement, BTI would not "directly or indirectly, enter into, or in any manner take part in, any business, profession, or other endeavor which competes with [UEC] in the sale of its merchandise (including any products that [UEC] may add to its product line during the term of this Agreement)," as "an employee, agent, independent contractor, owner, or otherwise."  Exh. B, ¶ 4.

101.    BTI breached the 2013 Agreement, in the first instance, through the conduct of its President Baldwin, by disclosing confidential trade information to Busway Solutions and DPTI, including but not limited to information related to the design, safety, efficacy, pricing and marketing of UEC products, as well as UEC's special business techniques, market analysis forms, software programs, customer lists, and manufacturing contacts.

102.    BTI breached the 2013 Agreement, in the second instance, through the conduct of its President Baldwin, by disclosing UEC's confidential trade information to the USPTO, for its own benefit and the benefit of Baldwin, Busway Solutions, and DPTI, when Baldwin and Busway Solutions applied for and obtained the '517 Patent, as well as when Baldwin and Busway Solutions filed U.S. Patent Application No. 15/185,816.

103.    BTI breached the 2013 Agreement, in the third instance, by competing with UEC in the sale of its products, through the actions of Baldwin and Busway Solutions, when Baldwin

and Busway Solutions started working on products competitive to UEC's products before the March 30, 2014 termination of the 2013 Agreement, and then three days later applied for, and ultimately obtained, a patent on those products.

104.    BTI's breaches of the 2013 Agreement have proximately caused UEC to suffer irreparable harm and incur damages, including without limitation damage to its reputation, and Defendants have wrongfully profited from such breaches.

WHEREFORE, Plaintiff Universal Electric Corporation respectfully requests that this Court enter Judgment in its favor on Count II and against Defendant Baldwin Technologies, Inc. and grant Universal Electric Corporation the relief set forth in its Prayer for Relief.

**COUNT III**
**BREACH OF CONTRACT**
**(2014 AGREEMENT)**

**UNIVERSAL ELECTRIC CORPORATION v. BALDWIN TECHNOLOGIES, INC.**

105.    UEC hereby incorporates the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

106.    The 2014 Agreement is a separate valid, binding, and enforceable contract between UEC and BTI.

107.    Pursuant to the 2014 Agreement, UEC and BTI agreed "not to make disparaging or negative comments regarding the other party hereto to any person or entity." Exh. D, ¶ 3.

108.    BTI breached the 2014 Agreement, when its President, Defendant Baldwin, made disparaging and negative statements regarding unsubstantiated safety issues with UEC's STARLINE® products through advertisements with Busway Solutions, PDU Cables and DPTI, in patent applications and in direct communications to end-users/customers as described *supra*.

109.   BTI's breaches of the 2014 Agreement have proximately caused UEC to suffer irreparable harm and incur damages, including without limitation damage to its reputation, and Defendants have wrongfully profited from such breaches.

WHEREFORE, Plaintiff Universal Electric Corporation respectfully requests that this Court enter Judgment in its favor on Count III and against Defendant Baldwin Technologies, Inc. and grant Universal Electric Corporation the relief set forth in its Prayer for Relief.

## COUNT IV
## BREACH OF FIDUCIARY DUTY, CONVERSION AND EQUITABLE ASSIGNMENT
### ('517 PATENT AND U.S. PATENT APPLICATION NO. 15/185,816)

### UNIVERSAL ELECTRIC CORPORATION v.
### MARK H. BALDWIN and BUSWAY SOLUTIONS, LLC

110.   UEC hereby incorporates the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

111.   On information and belief, one or more of Baldwin, BTI, Busway Solutions, and/or DPTI have wrongfully disclosed confidential trade information of UEC in filing for, and securing, the '517 Patent and U.S. Patent Application No. 15/185,816.

112.   Baldwin and BTI were fiduciaries to UEC by virtue of their commitment in the 2013 Agreement to "act as a [t]rustee of [UEC's] confidential trade information and [to] hold such information in trust and confidence for [UEC's] sole and exclusive use and benefit." Exh. B, ¶ 4.

113.   By filing for what became the '517 Patent in Baldwin's name, and in the name of Busway Solutions, but not in the name of UEC, and by otherwise disclosing confidential information owned by UEC in an effort to secure said patents, both Baldwin and BTI breached their fiduciary duties to UEC, and converted patent rights to which UEC is entitled.

114.     UEC has no adequate remedy at law.  Further immediate and irreparable injury to UEC will continue if Baldwin, BTI, Busway Solutions, and DPTI are allowed to continue to wrongfully benefit from UEC's confidential trade information, and continue to be unjustly enriched, and to breach the fiduciary duties.

115.     Accordingly, UEC is entitled to damages, an injunction and an equitable assignment of the '517 Patent from Baldwin and Busway Solutions to UEC as a result of the conduct described *supra*.

WHEREFORE, Plaintiff Universal Electric Corporation respectfully requests that this Court enter Judgment in its favor on Count IV and against Defendants Mark H. Baldwin and Busway Solutions, LLC and grant Universal Electric Corporation the relief set forth in its Prayer for Relief.

### COUNT V
### COMMON LAW UNFAIR COMPETITION

**UNIVERSAL ELECTRIC CORPORATION v. MARK H. BALDWIN, BALDWIN TECHNOLOGIES, INC., BUSWAY SOLUTIONS, LLC, DIRECT POWER TECHNOLOGIES, INC., and ENGINEERED PRODUCTS CO. d/b/a PDU CABLES**

116.     UEC hereby incorporates the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

117.     Defendants engaged in common law unfair competition through deceptive marketing when they made false and misleading statements regarding the safety of UEC's STARLINE® products as described *supra*.

118.     Defendants engaged in common law unfair competition by misappropriating intangible trade values, specifically the confidential trade information from UEC described *supra*, and by using such confidential trade information to unfairly compete directly against UEC.

119.     Defendants engaged in common law unfair competition when they injured UEC's goodwill with existing and prospective customers by making false and misleading statements regarding the safety of UEC's STARLINE® products and by using UEC's confidential trade information to unfairly compete directly against UEC.

120.     Upon information and belief, Defendants acted in active concert or participation with each other to prepare and disseminate false and misleading information regarding (a) the Busway Solutions products and (b) UEC's STARLINE® products and, therefore, are jointly and severally liable to UEC.

121.     Defendants' unfair competition proximately caused UEC to suffer irreparable harm and incur damages, including without limitation damage to its reputation, and Defendants have wrongfully profited from unfair competition.

WHEREFORE, Plaintiff Universal Electric Corporation respectfully requests that this Court enter Judgment in its favor on Count V and against Defendants Mark H. Baldwin, Baldwin Technologies, Inc., Busway Solutions, LLC, Direct Power Technologies, Inc., and Engineered Products Co. d/b/a PDU Cables and grant Universal Electric Corporation the relief set forth in its Prayer for Relief.

<u>**COUNT VI**</u>
**TRADE DISPARAGEMENT**

**UNIVERSAL ELECTRIC CORPORATION v. MARK H. BALDWIN, BALDWIN TECHNOLOGIES, INC., BUSWAY SOLUTIONS, LLC, DIRECT POWER TECHNOLOGIES, INC., and ENGINEERED PRODUCTS CO. d/b/a PDU CABLES**

122.     UEC hereby incorporates the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

123.     Defendants have made, and are continuing to make, literally false statements of fact and/or incorrect statements of opinion regarding the Busway Solutions products and UEC's

STARLINE® products in advertisements, on websites, in patent applications and through direct communications with customers as described *supra*.

124.    At the time the statements were made, Defendants either knew the statements were false or acted in reckless disregard for the truth or falsity of the statements.

125.    Defendants made false statements of fact and/or incorrect statements of opinion with the intent to divert UEC business from UEC to Defendants, and to cause pecuniary loss to UEC or, in the least, with a reasonable recognition that such statements would divert UEC business to Defendants and cause pecuniary loss to UEC.

126.    Upon information and belief, Defendants acted in active concert or participation with each other to prepare and disseminate false statements of fact and/or incorrect statements of opinion regarding the Busway Solutions product and UEC's STARLINE® products and, therefore, are jointly and severally liable.

127.    Defendants' false statements of fact and/or incorrect statements of opinion proximately caused UEC to suffer irreparable harm and incur damages, including without limitation damage to its reputation, and Defendants have wrongfully profited from the trade disparagement.

WHEREFORE, Plaintiff Universal Electric Corporation respectfully requests that this Court enter Judgment in its favor on Count VI and against Defendants Mark H. Baldwin, Baldwin Technologies, Inc., Busway Solutions, LLC, Direct Power Technologies, Inc., and Engineered Products Co. d/b/a PDU Cables and grant Universal Electric Corporation the relief set forth in its Prayer for Relief.

## COUNT VII
## FALSE DESIGNATION OF ORIGIN

### UNIVERSAL ELECTRIC CORPORATION v. BUSWAY SOLUTIONS, LLC, and ENGINEERED PRODUCTS CO. d/b/a PDU CABLES

128. UEC hereby incorporates the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

129. PDU Cables' email advertisement on June 7, 2017 states that Busway Solutions is offering "a two-year warranty on both the tap-off box *and the section of Starline T5 busbar it is plugged into*."

130. UEC is the sole owner, producer and originator of the STARLINE® T5 Series Track Busway products.

131. PDU Cables' email advertisement on June 7, 2017 does not give any attribution to UEC as the owner, producer and originator of the STARLINE® T5 Series Track Busway products.

132. PDU Cables' and Busway Solutions' representation that it will offer a warranty on UEC's STARLINE® T5 busbar is unauthorized by UEC, will void UEC's customers' warranties, Exh. N, and is likely to cause confusion, mistake or deception with respect to the origin and/or sponsorship of the STARLINE® T5 Series products.

133. PDU Cables' and Busway Solutions' representation that it will offer a warranty on UEC's STARLINE® T5 busbar creates an unwanted association between UEC and PDU Cables/Busway Solutions, and creates the misimpression that PDU Cables and Busway Solutions are an approved alternative source of UEC's STARLINE® T5 busbar. UEC has a right to be free from such unwanted association and such untrue impressions created by PDU Cables and Busway Solutions.

134.   PDU Cables' and Busway Solutions' representation that it will offer a warranty on UEC's STARLINE® T5 busbar and failure to attribute UEC as the owner and originator of the STARLINE® T5 busbar constitutes reverse-passing-off and/or reverse-palming-off.

135.   PDU Cables' and Busway Solutions' representation that it will offer a warranty on UEC's STARLINE® T5 busbar occurred in interstate commerce and was made in connection with goods and services that are being offered for sale in interstate commerce.

136.   PDU Cables' and Busway Solutions' actions described *supra*, constitute a false designation of origin under the Lanham Act, and create unwanted associations between UEC and PDU/Busway, each of which has proximately caused UEC to suffer irreparable harm and incur damages, including without limitation damage to its reputation, and Defendants have wrongfully profited from the foregoing.

WHEREFORE, Plaintiff Universal Electric Corporation respectfully requests that this Court enter Judgment in its favor on Count VII and against Defendants Busway Solutions, LLC and Engineered Products Co. d/b/a PDU Cables and grant Universal Electric Corporation the relief set forth in its Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Universal Electric Corporation prays for Judgment in its favor and against Defendants Mark H. Baldwin, Baldwin Technologies, Inc., Busway Solutions, LLC, Direct Power Technologies, Inc., and Engineered Products Co. d/b/a PDU Cables as follows:

1.   For injunctive relief against Defendants, as well as their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with any of the Defendants:

a.   Prohibiting Defendants from using, misappropriating, disclosing, or transmitting UEC's confidential trade information, including but not

limited to information regarding UEC's special business techniques, market analysis, forms, software programs, customer lists, and all other information regarding manufacture or distribution of UEC's products;

b.    Prohibiting Defendants from using, misappropriating, disclosing, or transmitting UEC's confidential trade information in any way, to solicit, serve, contact, or communicate with in any way, UEC's customers, prospective customers, manufacturers, and contacts;

c.    Prohibiting Defendants from using all confidential trade information acquired from UEC, and all materials (in written, electronic or other form) containing or derived from any such information, and all copies of such materials; and

d.    Prohibiting Defendants from making false, misleading, disparaging or negative statements regarding UEC or UEC products or offering to warrant UEC products.

2.    For the imposition of a constructive trust on all profits and monies realized by Baldwin, BTI, Busway Solutions, DPTI, and PDU Cables as a result of the conduct described *supra*;

3.    For an Order requiring equitable assignment of the '517 Patent to UEC, as well as any foreign counterparts, as a result of the conduct described *supra*;

4.    For joint and several liability among Defendants Baldwin, BTI, Busway Solutions, DPTI, and PDU Cables;

5.    For restitution and disgorgement of monies acquired by any one or more Defendants as a result of the conduct described *supra*;

6.      For compensatory damages, plus pre-judgment and post-judgment interest thereon at the maximum legal rate;

7.      For future lost profits;

8.      For finding this to be an exceptional case within the meaning of 15 U.S.C. § 1117, and to award all costs, expenses, attorneys' fees and other relief authorized by this provision; and

9.      For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Universal Electric Corporation demands a Jury Trial on all issues so triable.


Dated: June 26, 2017

/s/ Leland P. Schermer
Leland P. Schermer, Esq.
Pa. I.D. No. 47283
Nicholas J. Godfrey, Esq.
Pa. I.D. No. 312031
Russell J. Bopp, Esq.
Pa. I.D. No. 320832
DINSMORE & SHOHL LLP
One Oxford Centre, Suite 2800
301 Grant Street
Pittsburgh, PA 15219
412.281.5000 (t)
412.281.5055 (f)

*Attorneys for Plaintiff,*
*Universal Electric Corporation*