# EXHIBIT B



## SALES AGREEMENT

This Agreement is entered into as of March 1, 2013 and supersedes all previous contracts between

**Universal Electric Corporation "The Company"**

and

**Baldwin Technologies "The Sales Representative"**

In consideration of the mutual promises and covenants contained below and intending to be legally bound hereby, the parties agree as follows:

1. **Services to be Rendered; Territory; Products Covered.**

    A.  The Sales Representative shall sell the goods and merchandise of the Company and shall perform said sales services to the best of his abilities and to the Company's satisfaction. All work performed hereunder by the Sales Representative shall be of the highest professional standards.

    **B.  The Sales Representatives shall have sales rights pursuant to the terms of this Agreement, only in the territory comprised of the following zip code ranges: 20000 – 22399, 25400 – 25499, 26700 – 26899.**

**Excluded from these zip code ranges is the company, DuPont Fabros Technology. (See Attachment #1 dated 3/1/2013)**

Unless otherwise provided herein, the Sales Representative shall not be entitled to any commission or other compensation for sales made outside of his territory. The Company reserves the right to change, at any time in any manner whatsoever, in its sole discretion, the territory assigned to the Sales Representative. The Sales Representative's territory shall not include the Company's existing accounts in the Garment Industry; however the Sales Representative is encouraged to actively pursue new accounts in said industry. It shall be the responsibility of the Sales Representative to notify the Company of such accounts (Including an explanation of how such accounts were developed as a result of his efforts) prior to order entry. The Company retains the right in its sole discretion to reject any such orders for any reason whatsoever.

        C.    The Sales Representative shall solicit orders pursuant to the terms of this Agreement, only for Company products contained within the following product families:
STARLINE Track Busway
STARLINE Plug-In Raceway

All orders for Company products solicited by the Sales Representative shall be at the prices established by the Company. Special products or special assemblies shall be submitted to the Company for quotation. Any quotation made by the Sales Representative to a customer or proposed customer must be confirmed in writing by the Company.

        D.    The Sales Representative shall have no authority to contract for the Company in any manner, and shall have no authority to accept any order on behalf of the Company. All orders solicited by the Sales Representative are subject to acceptance by the Company which shall be conclusively evidenced by signature of the Company's authorized representative on an appropriate form provided by the Company which identifies the proposed customer. The Company may for any reason whatsoever reject any or all orders or cancel any such orders, in whole or in part, after their acceptance by the Company.

E.     No warranty, guarantee or representation in connection with the sale of the Company's products is made hereby other than as provided in the Company's catalog or such other written materials approved by the Company

**2.     Commissions.**

A.     The Sales Representative shall be paid a commission by the Company, subject to the remaining subparagraphs of this paragraph 2 and pursuant to the terms of this Agreement, on all orders solicited for the product families set forth herein, and accepted by the Company. The Sales Representative may also be paid, at the sole discretion of the Company, on accounts that would otherwise be excluded under the terms of this Agreement ("Other Accounts").  The Company's election to so compensate the Sales Representative for such Other Accounts shall in no way serve as a waiver of the Company's right to exclude such Other Accounts, or to discontinue payments on such Other Accounts, provided however, that the Sales Representative is notified in writing of the Company's intention to discontinue payments on the Other Accounts.

B.     The aforementioned commission shall be based on the amount an order is discounted. Each discount amount is assigned a specific commission. Refer to QF146 Sales Representative Commission Scale.  Commission shall be calculated off of the product invoice net price and shall be paid to the Sales Representative on orders accepted by the Company and shipped into the Sales Representative's territory as provided herein.  The product invoice price shall be determined in accordance with the Company Published Price Lists in effect at the time the order is accepted by the Company or in accordance with such other schedules agreed to in writing by the parties.  The Company reserves the right to change the commission rate for any reason whatsoever based on facts and circumstances and provided the Representative is notified in writing in advance of such action.  The commission shall be calculated on the discount amount of the invoice after first deducting transportation charges, taxes and cost of collection, if any.  Commissions shall be deemed earned by the Sales Representative when payment for products sold is received

by the Company from the respective customers, and earned commissions shall be paid to the Sales Representatives no later than the twentieth day of the month following the customer payment date.

        C.    The Company and Sales Representative recognize that parties in different territories may contribute to the sale of the Company's products. Therefore, the following split commissions are in effect:

(i) One-quarter (1/4) of commission to the area where the order was generated;

(ii) One-half (1/2) of commission to the area where the order was specified/engineered; and

(iii) One-quarter (1/4) of commission to the area where the material was shipped.

The commission on such sale shall be paid to the Sales Representative into whose territory the order is shipped. The Company shall determine ordering and shipping locations by way of territory zip code as defined herein. It shall be the responsibility of the applicable Sales Representative to notify the Company of specification/engineering credit due prior to the time that the order is entered. Unless the Company is notified otherwise, it shall assume that the shipping and installation location are one in the same. Since in some cases the shipment location may not be the same location where the product is ultimately installed, it is the responsibility of the Sales Representative to notify the Company of any change in installation location prior to the entry of the order. The Company shall have final authority for determining all commission splits.

        D.    It is the Sales Representative's responsibility to visit or call upon first time customers of a complete system installed in said Sales Representative's

territory to ensure customer satisfaction. It shall be the Sales Representative's responsibility to inform the Company of said satisfactory installation.

E. The Sales Representative shall be responsible to follow up via written feedback to the Company on any and all sales leads supplied by the Company. The Company reserves the right to withhold commissions on resulting orders from such sales leads in the event of the Sales Representative's failure to provide said written feedback.

F. The Company reserves the following existing national and private label accounts in the Sales Representative's territory without payment of commission to the Sales Representative:

**Amerlux Lighting Systems, Times Square Lighting, Home Depot, Wal-Mart, Toys R Us, Best Buy, Architectural BusStrut**

Newly established national or private label accounts developed by the Sales Representative may result, at the discretion of the Company, in commission payments inconsistent with those established herein. In such cases the commission rate shall be negotiated on an individual basis between the Company and the Sales Representative.

### 3. Samples/Displays.

The Company shall provide the Sales Representative without charge and in reasonable quantities all necessary samples, promotional materials and other such items as the Company believes will assist in the promotion of its business. The Sales Representative shall not be entitled to reimbursement for any expenses incurred by him in the course of promoting the Company's business.

### 4. Trade Secrets; Competitive Merchandise; Restrictive Covenant.

A. With respect to the Company's special business techniques, market analysis, forms, software programs, customer list, and all other information

regarding manufacture or distribution of the Company's products, the Sales Representative acknowledges that all such information: (i) belongs to the Company; (ii) constitutes specialized and highly confidential information not generally known in the industry; (iii) constitutes trade secrets of the Company. Accordingly, the Sales Representative recognizes and acknowledges that it is essential to the Company to protect the confidentiality of this trade information.

      B.    The Sales Representative agrees to act as a Trustee of the Company's confidential trade information and will hold such information in trust and confidence for the Company's sole and exclusive use and benefit.

      C.    During the term hereof and for thirty-six (36) months thereafter, the Sales Representative shall not disclose such confidential trade information to any person, firm, association, or other entity for any reason or purpose whatsoever, unless such information has already become common knowledge or unless the Sales Representative is required to disclose the information by judicial process.

      D.    During the term of this Agreement, the Sales Representative shall not, directly or indirectly, enter into, or in any manner take part in, any business, profession, or other endeavor which competes with the Company in the sale of its merchandise (including any products that the Company may add to its product line during the term of this Agreement). The Sales Representative shall not so compete either as an employee, agent, independent contractor, owner, or otherwise.

      **E.**    **Restrictive covenant:**

      (i)    For a period of one (1) year after the expiration or termination of this Agreement for any reason, the Sales Representative will not, directly or indirectly, contact any then-existing customer of the Company for the purpose of selling merchandise that is competitive with the Company's merchandise on behalf of any other person, firm, company, or corporation.

      (ii)    The parties acknowledge that they have attempted to limit the Sales Representative's right to compete only to the extent necessary to protect

the Company from unfair competition. However, the parties hereby agree that, if the scope or enforceability of the restrictive covenant is in any way disputed at any time, a court or other trier of fact may modify and enforce the covenant to the extent that it believes the covenant to be reasonable under the circumstances then existing

(iii)   The Sales Representative further acknowledges that (a) in the event his engagement with the Company terminates for any reason, he will be able to earn a livelihood without violating the foregoing restrictions; and (b) that his ability to earn a livelihood without violating such restrictions is a material condition to his retention by the Company.

### 5. Independent Contractor Status.

The Sales Representative expressly acknowledges that he will be acting as an independent contractor and not as an employee for all purposes, including payment of Social Security withholding tax and all other Federal, State and Local taxes. The Sales Representative shall be free to set his own hours and appointments and will be responsible for all of his own expenses.

### 6. Term of Agreement.

A.   This Agreement shall continue for a period of one year beginning on ___March 1st, 2013___ subject however to prior termination of this Agreement as provided herein. This Agreement shall renew automatically for a one year period each _Year_ unless prior notice is given by either party no less than thirty days prior to the renewal date.

B.   This Agreement shall terminate immediately upon the death of the Sales Representative.

C.   This Agreement may be terminated by either party upon the giving of thirty (30) days prior written notice to the other. Such notice shall be given by United States mail sent to the last known address of the party concerned and shall be effective upon mailing of such notice.

7. **Warranty against Prior Existing Restrictions.**

The Sales Representative represents and warrants to the Company that he is not a party to any agreement containing a non-competition clause or other restriction with respect to:

    A.    The services which he is required to perform hereunder; or

    B.    The use or disclosure of any information, directly or indirectly, related to the Company's business or to the services he is required to render for the Company.

8. **Prohibition against Assignment.**

The Sales Representative agrees, for himself and on behalf of his successors, heirs, executors, administrators, and any person or persons claiming under him, that this Agreement and the rights, interests, and benefits hereunder cannot be assigned, transferred, pledged, or hypothecated in any way and shall not be subject to execution, attachment, or similar process. Any attempt to do so, contrary to these terms, shall be null and void and shall relieve the Company of any and all obligations or liability hereunder.

9. **Severability.**

If any provision, paragraph, or subparagraph of this Agreement is adjudged by any court of law to be void or unenforceable, in whole or in part, such adjudication shall not be deemed to affect the validity of the remainder of the Agreement, including any other provision, paragraph, or subparagraph. Each provision, paragraph, and subparagraph of this Agreement is declared to be separable from every other provision, paragraph and subparagraph and constitutes a separate and distinct covenant.

10. **Rights upon Termination.**

Upon the expiration or termination of this Agreement for any reason, whether with or without cause, the Sales Representative shall be entitled only to accrued commissions on those contracts already accepted and shipped by the Company prior to the effective date thereof. Such accrued commissions shall be paid to the Sales

Representative within thirty (30) days of the Company's receipt of the applicable invoice amounts.

11. **Modification and Waiver.**

No waiver or modification of this Agreement shall be valid unless it is in writing and signed by the Company and the Sales Representative.

12. **Binding Effect.**

This Agreement shall be binding upon, and inure to the benefit of, the Company and its successors, assigns, heirs, legal representatives, executors, and administrators.

13. **Complete Understanding.**

This Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof. This Agreement supersedes any and all other Agreements, whether oral or in writing, between the parties with respect to the subject matter hereof.

14. **Governing Law.**

This Agreement shall be subject to, and governed by, the laws of the Commonwealth of Pennsylvania.

15. **Headings.**

The headings in this Agreement are inserted for convenience only and shall not be considered in interpreting the provisions hereof.

16. **Notice.**

All notices shall be given in writing and sent by registered or certified mail, return receipt requested, and shall be addressed to:

In the case of the Company

Lance Sabados, Vice President of Sales
Universal Electric Corporation
168 Georgetown Rd
Canonsburg, PA 15317

and in the case of the Sales Representative:

### 17. Counterparts.

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

### 18. Rep Reference Guide

UEC provides all authorized reps with a Rep Reference Guide; this document should be used as a resource, this document details all UEC's Sales Policies and Procedures for UEC's Sales Programs.

**IN WITNESS WHEREOF,** the parties hereto have executed this agreement on the day and year first above written.

Sales Representative: *[signature]*

Baldwin Technologies
By: Mark Baldwin, President

Date signed: 3-5-13

Company: *[signature]*

Universal Electric Corporation
By: Lance Sabados, Vice President of Sales

Date signed: 3-5-13

Attachment #1

BTI Sales Agreement
March 1, 2013

1. Dupont Fabros Technology (DFT) will be covered by Universal Electric Corporation (UEC) as a corporate account. Pricing requests, Bill of Material (BOM) development and technical questions from DFT corporate, or any DFT site in Virginia, will be handled by UEC. This includes existing buildings and future buildings.

2. BTI will receive no commission for orders placed by DFT, except for the conditions listed in Section 3.

3. If a customer located in Baldwin Technologies (BTI) assigned region is currently using UEC products (Starline) for their data centers, and that company decides take space at DFT, then a 50% specification credit may be given to BTI for commission calculation. BTI is required to submit a sales credit split claim form prior to purchase order placement to request this credit.

4. All pricing requests of UEC products, for projects that will ultimately be installed in DFT sites, need to be approved by UEC's Southeast Regional Sales Manager prior to submission to the requesting entity. Normal commission rates will apply if the order is received directly from the entity located in BTIs region, as long as pricing was approved as directed above.