# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSAL ELECTRIC CORPORATION,<br><br>　　　　　Plaintiff<br>　　v.<br><br>MARK H. BALDWIN, BALDWIN TECHNOLOGIES, INC., BUSWAY SOLUTIONS, LLC, DIRECT POWER TECHNOLOGIES, INC., and ENGINEERED PRODUCTS CO. d/b/a PDU CABLES,<br>　　　　　Defendants. | Civil Action No. 2:17-cv-00842-YK<br><br>Honorable Yvette Kane<br><br>(Electronically Filed) |

**BRIEF IN SUPPORT OF DEFENDANT ENGINEERED PRODUCTS COMPANY d/b/a PDU CABLES' MOTION TO DISMISS THE AMENDED COMPLAINT**

Dated: October 9, 2017

James L. Beausoleil, Jr. (No. 74308)
Steven K. Schartup (No. 315982)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Tel: 215.979.1120
Fax: 215.689.0889
Email: jlbeausoleil@duanemorris.com
Email: skschartup@duanemorris.com

*Attorneys for Defendant*
*Engineered Products Co.*
*d/b/a PDU Cables*

## **TABLE OF CONTENTS**

Page

I. FACTUAL BACKGROUND ........................................................................................... 1

II. LEGAL STANDARD ...................................................................................................... 3

III. ARGUMENT ................................................................................................................... 4

    A. UEC's Claim for False Advertising Under the Lanham Act Should Be Dismissed. ............................................................................................................. 4

        1. The Alleged False and Misleading Statements Constitute Non-Actionable Puffery. ........................................................................................ 4

        2. UEC Fails to Plead False Advertising Damages with Specificity. ............. 8

    B. UEC's Trade Disparagement Claim Should Be Dismissed. .................................. 9

        1. The Statements at Issue Are Non-Actionable Statements of Opinion. ...................................................................................................... 9

        2. The Statements at Issue Are Privileged. .................................................... 10

        3. The Trade Disparagement Claim Should Be Dismissed Because UEC Has Failed to Plead Special Damages. ............................................... 11

    C. UEC Fails to State a Claim of False Designation of Origin Under the Lanham Act and, in the Alternative, Has Failed to Plead Damages with Specificity. ............................................................................................................ 12

        1. UEC's Claim of False Designation of Origin Fails Because Plaintiff Has Not Alleged Any Facts That PDU Cables Falsely Designated the Origin of Any UEC Product. ............................................. 12

        2. UEC Has Failed to Plead Damages with Specificity for its False Designation of Origin Claim. ..................................................................... 14

    D. UEC's Claim of Unfair Competition Fails for the Same Reasons UEC's Lanham Act Claim for False Advertising Fails. .................................................. 15

IV. CONCLUSION .............................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Adv. Fluid Sys. v. Huber*, 28 F. Supp. 3d 306 (M.D. Pa. 2014) ........................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................15

*AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994)...................... 13-14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................3-4, 15

*Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 2017 U.S. Dist. LEXIS 70050
    (S.D. Cal. May 8, 2017) ............................................................................................................8

*Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378 (E.D. Pa. 2009) .........................................12

*Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993) ....................................................... 4-5, 8

*Christopher v. Harbury*, 536 U.S. 403 (2002) ..................................................................................3

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ........................................12

*Diodato v. Wells Fargo Ins. Servs.*, 44 F. Supp. 3d 541 (M.D. Pa. 2014) ..........................................9

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ...............................................................4

*KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782 (E.D. Pa. 2011).............................12

*Laitram Machinery, Inc. v. Carnitech A/S*, 884 F. Supp. 1074 (E.D. La. 1995)...............................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)...............................8

*Miadeco Corp. v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 49410 (S.D. Fla. Mar.
    30, 2017)...................................................................................................................................7

*Mzamane v. Winfrey*, 693 F. Supp. 2d 442 (E.D. Pa. 2010) .............................................................9

*Parker v. Google, Inc.,* 242 F. App'x 833 (3d Cir. 2007)................................................................13

*Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661 (D. Del. 2008).....................................................4

*Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319 (E.D.N.Y. 2003) ............... 13-14

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241 (3d Cir. 2011).............................8

*R.J. Ants, Inc. v. Marinelli Enterprises, LLC,* 771 F. Supp. 2d 475 (E.D. Pa. 2011).......................15

*Regal Indus., Inc., v. Genal Strap, Inc.*, 1994 U.S. Dist. LEXIS 10193 (E.D. Pa. Jul.
    26, 1994)..................................................................................................................................15

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362 (D. Del. 2009)................................5, 8

*Sims v. Mack Truck Corp.*, 488 F. Supp. 592 (E.D. Pa. 1980)...................................................... 10-11

*Swift Bros. v. Swift & Sons, Inc.*, 921 F. Supp. 267 (E.D. Pa. 1995) .................................................12

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007)....................................4, 8

*U.S. Healthcare, Inc. v. U.S. Health Care Sys. of Pa., Inc.*, 898 F.2d 914 (3d Cir.
   1990).................................................................................................................................. 5, 8-10

*XYZ Two Way Radio Service, Inc. v. Uber Technologies, Inc.*, 214 F. Supp. 3d 179
   (E.D.N.Y. 2016) ...................................................................................................................... 6-7

**State Cases**

*Pro Golf Mfg. v. Tribune Rev. Newspaper Co.*, 809 A.2d 243 (Pa. 2002)........................................12

**Federal Statutes and Rules of Court**

15 U.S.C. § 1125(a)........................................................................................................................4, 13

Fed. R. Civ. P. 9(g)................................................................................................................................12

Fed. R. Civ. P. 12(b)(6)...........................................................................................................................3

Lanham Act ................................................................................................4-5, 8-9, 12, 14-15

**Other Authorities**

*Outdoor Techs., Inc. v. Vinyl Visions, LLC*, 83 U.S.P.Q. 2d 1418 (S.D. Ohio 2006)........................6

Restatement (Second) of Torts Section 649 ...................................................................................10

I. **FACTUAL BACKGROUND**

UEC is a manufacturer of power distribution systems. Am. Compl. ¶ 16. UEC's products include the Starline Track Busway and Starline Plug-In Raceway. *Id.* Among UEC's Starline Track Busway products are a line of products known as the "T5 Series." *Id.* ¶ 17.

Between March 1999 and March 2014, Defendant Baldwin Technologies, Inc. ("BTI") acted as UEC's exclusive authorized sales representative in Maryland, Virginia, and the District of Columbia for sale of the Starline Plug-In Busway products. *Id.* ¶¶ 24-31. UEC alleges that Baldwin and BTI have used the trade information they received as a distributor of the Starline products to "improperly compete" with UEC. *Id.* ¶¶ 36-57. UEC alleges that, "[i]n an effort to steal existing UEC customers, Baldwin designed and implemented a campaign of false and misleading advertising with respect to the safety of UEC products." *Id.* ¶ 58. This alleged "conspiracy" includes PDU Cables.

UEC alleges that PDU Cables made the following actionable statements:

<u>PDU Cables' February 25, 2017 Press Release:</u>

"Tap-off box masts have always been a common culprit in busway track system failures." (Am. Compl. ¶ 86(a))

"The Busway Solutions product improvement redesign resolved these and other manufacturing weaknesses resulting in a tap-off box that delivers a more robust, safe and secure fault free load system." (*Id.* ¶ 86(b))

"The re-engineered plug mast with larger paddle surface area, has been designed for increased safety, superior performance and easier installation." (*Id.* ¶ 86(c))

"While visually you'd be hard-pressed to tell the difference between the Busway Solutions tap-off boxes from other tap-off boxes, significant improvements in design and quality of materials have resulted in a patented, ETL approved tap-off box that sets a new industry standard for excellence." (*Id.* ¶ 86(d))

<u>PDU Cables' March 15, 2017 Announcement:</u>

"Busway Solutions has designed a safer and superior tap-off box to the standard OEM plug-in's [] offered 'U' shaped open channel track busway, like UEC's Starline's T5 Series busway track system." (Am. Compl. ¶ 64)

PDU Cables' Website:

"PDU Cables is now the exclusive distributor of Busway Solutions tap-off boxes. Busway Solutions has engineered a series of superior tap-off boxes designed specifically to accommodate the Starline T5 Track Busway system." (Am. Compl. ¶ 75)

[The Busway Solutions tap-off box can be] "used to distribute (tap-off) power from 'U' shaped open channel busway track systems including the Starline T5 series, B250, B400, B800, and B1200 track busway." (*Id.* ¶ 76)

"[U]nlike OEM busway tap-off boxes which offer only a one-year warranty, Busway Solutions offers a full two-year warranty on its tap-off boxes. Busway Solutions believes so strongly in its superior design, materials and manufacturing of its tap-off boxes, it is willing to double the warranty you'll find on those other OEM tap-off boxes." (*Id.* ¶ 79)

"Tap-off box masts have always been a common culprit in busway track system failures." (*Id.* ¶ 80(a))

"The Busway Solutions product improvement redesign resolved these and other manufacturing weaknesses resulting in a tap-off box that delivers a more robust, safe and secure fault free load delivery." (*Id.* ¶ 80(b))

"While visually you'd be hard pressed to tell the difference between the Busway Solutions tap-off boxes from other tap-off boxes, significant improvements in design and quality of materials have resulted in a patented, ETL approved tap-off box that sets a new industry standard for excellence." (*Id.* ¶ 80(c))

"Busway Solutions tap-off boxes address one of the most common complaints of OEM tap-offs, difficult to install." (*Id.* ¶ 80(d))

"If the head is misaligned, it isn't uncommon to snap off the head during rotation." (*Id.* ¶ 80(e))

"When older-style tap-off boxes fail it is typically because of the electrical mast." (*Id.* ¶ 80(f))

"If they survive the initial setup, and general 'man-handling' during installation, the use of only a single, or more commonly non-use at all of the, mounting taps result in excessive and uneven pressure on the electrical mast leading the mast to serve as the mechanical support for the tap-off box, with device failure a not uncommon occurrance [sic]." (*Id.* ¶ 80(g))

<u>PDU Cables' June 7, 2017 Email Advertisement:</u>

"Because Busway Solutions believes so strongly in its superior redesigned tap-off boxes, they decided to offer a two-year warranty on both the tap-off box and the section of Starline T5 busbar it is plugged into."  (Am. Compl. ¶ 92)

In terms of the damages supposedly suffered by UEC as a result of PDU Cables' false statements, UEC alleges:

"The false, misleading, and disparaging statements made by Defendants regarding the safety of UEC's STARLINE® Tap-Off Boxes have resulted in the diminution of goodwill and lost sales with existing customers of UEC."  (*Id*. ¶ 105)

"The false, misleading, and disparaging statements made by Defendants regarding the safety of UEC's STARLINE® Tap-Off Boxes have created a likelihood of injury to UEC in terms of continued diminution of goodwill and declining sales." (*Id*. ¶ 106)

In attempt to plead specificity, UEC alleged that it has "suffered diminution of goodwill with two existing customers and has incurred additional time and expense, including time of employees and attorneys, addressing the false, misleading, and disparaging statements made by Defendants with respect to the safety of UEC's [products]."  Am. Compl. ¶ 113.  However, these two purported instances of lost sales pled by UEC relate to statements made entirely by Baldwin and BTI – not PDU Cables.  *Id*. ¶¶ 114-125.  UEC does not plead with specificity <u>any</u> sales or customers lost as a result of the purportedly false or defamatory material published by PDU Cables.

II.     **LEGAL STANDARD**

In reviewing a motion under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in a light favorable to the plaintiff.  *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).  The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell*

3

*Atl. Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007).  The plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "Conclusory or 'bare bones'" allegations and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not survive a motion to dismiss.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

### III.   ARGUMENT

#### A.   UEC's Claim for False Advertising Under the Lanham Act Should Be Dismissed.

##### 1.   The Alleged False and Misleading Statements Constitute Non-Actionable Puffery.

To state a claim for false advertising, a plaintiff must plead facts that the defendant made false or misleading statements or descriptions of fact in commercial advertising or promotion that "misrepresent[ed] the nature, characteristics, qualities, or geographic origin of his … goods, services, or commercial activities."  *Id.* § 1125(a)(1)(B).  "Only statements of fact capable of being proven false are actionable under the Lanham Act because, when personal opinions on nonverifiable matters are given, the recipient is likely to assume only that the communicator believes the statements, not that the statement is true."  *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 679 (D. Del. 2008) (citations omitted).  Whether the claim is based on statements of literal falsity or a likeliness to mislead consumers, "the plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product."  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 n.3 (2d Cir. 2007).

"[M]isdescriptions or false representations of specific characteristics of a product," which are actionable under the Lanham act, are distinguished from puffery, which is not actionable.  *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993).  The Third Circuit has defined

4

"puffery" as "exaggeration or overstatement expressed in broad, vague and commendatory language." *Id.*  Puffery is not actionable as false advertising because it is "understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer." *Id.*; *see also U.S. Healthcare, Inc. v. U.S. Health Care Sys. of Pa., Inc.*, 898 F.2d 914, 922 (3d Cir. 1990) ("Mere puffing, advertising that is not deceptive for no one would rely on its exaggerated claims, is not actionable[.]" (quotation omitted)).

UEC has listed a number of statements allegedly made by PDU Cables that it claims are false or misleading and actionable under the Lanham Act.  Although UEC alleges that "Baldwin designed and implemented a campaign of false and misleading advertising with respect to the *safety* of UEC products[,]" Am. Compl. ¶ 58 (emphasis added), all but a handful of the statements at issue have nothing to do with safety.  Instead, the statements consist of classic assertions of puffery routinely made by businesses in promotion and advertising:

> "improv[ed] redesign" (Am. Compl. ¶ 86(b))
>
> "significant improvements in design and quality of materials" (*Id.* ¶ 86(d))
>
> "engineered a series of superior tap-off boxes" (*Id.* ¶ 75)
>
> "believes so strongly in its superior design, materials and manufacturing of its tap-off boxes, [Busway Solutions] is willing to double the warranty you'll find on those other OEM tap-off boxes." (*Id.* ¶¶ 79, 92)
>
> "address one of the most common complaints of OEM tap-offs, difficult to install" (*Id.* ¶ 80(d))
>
> "sets a new standard for industry excellence" (*Id.* ¶ 86(d))

Federal courts have routinely held that terms like "new," "best," "redesigned," "improved," "innovative," and "excellence" are non-actionable statements of puffery that are opinions of the defendant that cannot be proven false.  *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp.

2d 362, 367 (D. Del. 2009) (dismissing claims of false advertising asserted by windshield wiper manufacturer because words like "new," "improved," and "innovative" are classic puffery); *Laitram Machinery, Inc. v. Carnitech A/S*, 884 F. Supp. 1074, 1083 (E.D. La. 1995) (statement that machines are "new and improved" is puffery); *Outdoor Techs., Inc. v. Vinyl Visions*, *LLC*, 83 U.S.P.Q. 2d 1418 (S.D. Ohio 2006) ("phrases such as 'best,' 'new and improved,' or 'redesigned and improved'" have all been held to be puffery).

UEC further alleges that Defendants have produced a "steady drumbeat" of false or misleading statements concerning the unsafe nature of Starline products.  Am. Compl. ¶ 85. However, even when taking the allegations of the Amended Complaint in a light most favorable to UEC, there are, at most, only two allegedly false or misleading statements that relate to product safety:

> "Busway Solutions has designed a safer and superior tap-off box to the standard OEM plug-in's offered 'U' shaped open channel track busway, *like UEC's Starline T5 Series busway track system*." (*Id*. ¶ 64, emphasis in the Amended Complaint; no emphasis in original)
>
> "Tap-off box masts have always been a common culprit in busway track system failures.  The Busway Solutions product improvement redesign resolved these and other manufacturing weaknesses resulting in a tap-off box that delivers more robust, safe and secure fault free delivery." (*Id*. ¶ 80(a)-(b))

These statements are likewise non-actionable puffery.  Two recent decisions dismissing claims against Uber Technologies, Inc. exemplify the inactionable nature of these supposedly false or misleading statements of product safety.  In *XYZ Two Way Radio Service, Inc. v. Uber Technologies, Inc.*, the U.S. District Court for the Eastern District of New York dismissed a false advertising claim against Uber for supposedly false statements made about its safety practices. 214 F. Supp. 3d 179 (E.D.N.Y. 2016).  Plaintiffs in the case asserted that Uber made the following false or misleading statements about its ride-sharing safety:

6

> "Wherever you are around the world, Uber is committed to connecting you to the safest ride on the road. This means setting the strictest safety standards possible, then working hard to improve them every day."
>
> "We believe deeply that, alongside our driver partners, we have built the safest transportation option in 260 around the world."
>
> "Unlike the taxi industry, our background checking process and standards are consistent across the United States and often more rigorous than what is required to become a taxi driver."

*Id.* at 183-184. The court, in granting Uber's motion to dismiss, held:

> No doubt, these statements are intended to convey the impression that Uber takes the safety of its passengers seriously. But they do so in terms that clearly fall within one or more of the accepted definitions of puffery. The overall tone is boastful and self-congratulatory. Many of the statements are couched in aspirational terms – "committed to," "aim to," "believe deeply" -- that cannot be proven true or false. Others are vague and hyperbolic; if Uber literally set the "strictest safety standards possible" at the outset, it could not "improve them every day." In sum, the Court concludes that the challenged statements cannot reasonably be understood as specific representations of objective facts.

*Id.* at 184 (citation omitted); *see also Miadeco Corp. v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 49410, at *6-10 (S.D. Fla. Mar. 30, 2017) (dismissing a false advertising claim against Uber for similar statements as in *XYZ* on Uber's safety *vis a vis* other taxi and ride-share operators).

The statements allegedly made by PDU Cables are not actionable even if they refer to product safety. The first alleged instance states that "Busway Solutions has designed a safer and superior tap-off box to the standard OEM plug-in's offered 'U' shaped open channel track busway." As set forth above, stating that Busways Solutions has designed a "safer and superior" tap-off box (which does not identify how the product is safer or superior) to the standard OEM plug-in is clearly the kind of vague, boastful statement that constitutes puffery.

The second alleged false statement relating to safety states that tap-off box masts are often the "common culprit" in busway track failures and Busway Solutions' "improve[d]

redesign resolved these and other manufacturing weaknesses" resulting in a "more robust, safe and secure fault free delivery." Am. Compl. ¶ 80(a)-(b).  This statement is also too vague and hyperbolic to be actionable or capable of being proven false.  How does one quantify the term "common culprit"?  A few times?  Many?  One of many causes of busway track failure?  The next portion -- "improved redesign" resolving "these and other manufacturing weaknesses" -- begs the question: which manufacturing weaknesses?  The weakness of the tap-off box?  The mast?  What others?  And, as set forth above, the terms "more robust, safe and secure" are classic terms of puffery that are not actionable because they do not relate to a specific inherent or material quality of the product, *Time Warner Cable*, 497 F.3d at 153 n.3, are expressions of the seller's opinion (which consumers reasonably understand to be the case), *Castrol*, 987 F.2d at 945, and are incapable of being proved false.  *Robert Bosch*, 632 F. Supp. 2d at 367.

## 2. UEC Fails to Plead False Advertising Damages with Specificity.

False advertising and false designation claims under the Lanham Act require a plaintiff to plead a likelihood of commercial injury to the plaintiff flowing from the false representation or designation.  *Adv. Fluid Sys. v. Huber*, 28 F. Supp. 3d 306, 336 (M.D. Pa. 2014); *see also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (requiring plaintiff to plead a "likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." in support of false advertising claim).  The plaintiff must allege that the false advertising "actually deceives a portion of the buying public." *U.S. Healthcare*, 898 F.2d at 922.  Boilerplate assertions of lost sales and diminished goodwill – in general terms – do not satisfy the pleading burden for a false advertising claim.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014); *see also Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 2017 U.S. Dist. LEXIS 70050, at *15 (S.D. Cal. May 8, 2017) ("There are no more specific allegations of,

at the very least, lost sales or damage to its reputation. This is insufficient to plead proximate causation to support a Lanham Act claim.").

UEC fails to plead and identify the basis of its alleged injury, instead providing only boilerplate legal recitations and conclusions of fact. *See* Am. Compl. ¶¶ 104-106, 138. The two examples of purported "lost sales" offered by UEC – Instor (*Id.* ¶¶ 114-120) and Singleton Electric Co. (*Id.* ¶¶ 121-125) – relate entirely to statements made by Baldwin and BTI in discrete bidding proposals. These purported examples have nothing to do with the statements allegedly made by PDU Cables. And, despite some apparent difficulty resulting from the statements made by Baldwin and BTI, UEC ultimately retained this business (meaning, no lost sales).

### B.  UEC's Trade Disparagement Claim Should Be Dismissed.

#### 1.  The Statements at Issue Are Non-Actionable Statements of Opinion.

"[S]tatements of opinion are immune from defamation liability." *Diodato v. Wells Fargo Ins. Servs.*, 44 F. Supp. 3d 541, 562 (M.D. Pa. 2014).[1] "[O]nly statements of fact, rather than mere expressions of opinion, are actionable[.]" *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 447 (E.D. Pa. 2010). For a statement of opinion to be actionable, the alleged statement "must be reasonably understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Id.* "Opinion that fails to imply underlying defamatory facts cannot support a cause of action[.]" *U.S. Healthcare*, 898 F.2d at 923.

The statements UEC claims as commercially disparaging are all opinions of Busway Solutions that infer no undisclosed defamatory facts as to UEC's products. The press releases and other "announcements" are prefaced as the opinion of Busway Solutions. *See* Am. Compl. ¶ 79 ("Busway Solutions *believes so strongly* in its superior design, materials, and manufacturing

---

[1] The standard applicable to a commercial disparagement claim is identical to that of defamation claims. *Id.* at 561 n.14.

9

of its tap-off boxes[.]" (emphasis added)); ¶ 92 ("Busway Solutions *believes so strongly* in its superior redesigned tap-off boxes[.]" (emphasis added)). And the statements are largely boiled down to Busway Solutions' belief that it has built a better product:

> "designed a safer and superior tap-off box" (*Id.* ¶ 64);
>
> "engineered a series of superior tap-off boxes" (*Id.* ¶ 75);
>
> "significant improvement in design and quality" (*Id.* ¶ 80(a));

No reasonable customer would read these statements, taken as a whole, and conclude that Busway Solutions' tap-off boxes are better because there is a specific design defect or safety issue associated with UEC's product. Nor does UEC point to any such inference of a defect or safety issue.

"It is for the court to determine, in the first instance, whether the statement … is capable of defamatory meaning[.]" *U.S. Healthcare*, 898 F.2d at 923. Here, the statements at issue are non-actionable expressions of opinion by the seller that do not on their face infer specific defamatory facts about UEC's products.

### 2. The Statements at Issue Are Privileged.

Section 649 of the Restatement (Second) of Torts states:

> A competitor is conditionally privileged to make an unduly favorable comparison of the quality of his [products], with the quality of competing [products] of a rival competitor, although he does not believe that his own [products] are superior to those of the rival competitor, if the comparison does not contain false assertions of specific unfavorable facts regarding the rival competitor's things.

Restatement (2d) of Torts § 649. "This privilege is grounded in the common sense knowledge that purchasers will take such comparisons *cum grano salis* [with a grain of salt]." *Sims v. Mack Truck Corp.*, 488 F. Supp. 592, 605 (E.D. Pa. 1980).

10

In *Sims*, a rival truck company sued Mack Trucks for a film distributed by Mack Trucks that portrayed the rival's trucks as "headknockers" – *i.e.*, trucks with cabs that had insufficient room for the driver's head resulting in the head being "knocked around" in the cab. *Id.* The court rejected the rival's disparagement claims on the basis that the film was competitively privileged: "At most, plaintiff alleges a general untruthful and unfavorable comparison of his product with that of his competitor. Such a statement is privileged when made by a competitor." *Id.* The Court reasoned that: "Every competitor in the market place is expected to sing a little tune of 'Anything Theirs Can Do, Ours Can Do Better.' Diluting the privilege to the extent necessary to make actionable almost subliminal disparagement alleged here would have a serious anti-competitive effect." *Id.*

UEC's claim rests upon supposedly unfavorable comparisons of Busway Solutions' tap-off box to the box manufactured by UEC. The defamatory nature of the comparison, however, is not apparent on the face of the actual statements released by PDU Cables. Hence, UEC goes to great lengths to add explanatory paragraphs, parentheticals, and highlighting to explain how exactly the statements released are defamatory. Even accepting UEC's convoluted allegations as true, unfavorable and subjective product comparisons alone cannot support a claim of commercial disparagement. As set forth above, the statements at issue contain no specific defamatory facts about UEC's products. Nor do the statements infer such specific facts. Accordingly, UEC's claim for trade disparagement should be dismissed with prejudice as opinions that are commercially privileged.

> **3. The Trade Disparagement Claim Should Be Dismissed Because UEC Has Failed to Plead Special Damages.**

A plaintiff must plead special damages in a claim for commercial disparagement – *i.e.*, damages with considerable specificity that sets out "the names of customers lost and financial

11

loss resulting from the tort." *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 416 (E.D. Pa. 2009); *Swift Bros. v. Swift & Sons, Inc.*, 921 F. Supp. 267, 276 (E.D. Pa. 1995); *Pro Golf Mfg. v. Tribune Rev. Newspaper Co.*, 809 A.2d 243, 247 (Pa. 2002). Rule 9(g) provides "when items of special damages are claimed, they shall be specifically stated." Fed. R. Civ. P. 9(g)

As set forth above, UEC offers only threadbare and conclusory allegations entirely devoid of specificity or substance. UEC does not allege which, if any, customers it has lost as a result of PDU Cables' disparagement. UEC does not allege how, if at all, its goodwill or reputation has been harmed. Nor does UEC offer any proof that it has suffered a diminution in sales that corresponds with PDU's alleged disparaging statements. The two examples offered by UEC relate only to statements made by Baldwin and BTI – not PDU Cables.

Without pleading special damages aimed at PDU Cables' conduct, UEC's claim of trade disparagement must fail as a matter of law. *KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 806 (E.D. Pa. 2011); *Swift Bros.*, 921 F. Supp. at 276.

    **C.**    **UEC Fails to State a Claim of False Designation of Origin Under the Lanham Act and, in the Alternative, Has Failed to Plead Damages with Specificity.**

        **1.**    **UEC's Claim of False Designation of Origin Fails Because Plaintiff Has Not Alleged Any Facts That PDU Cables Falsely Designated the Origin of Any UEC Product.**

False designation of origin claims often take one of two forms: "passing off" claims and "reverse passing off" claims. The Supreme Court has distinguished the two claims as follows: "passing off" (or "palming off") occurs when a producer misrepresents his own goods or services as those of another. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003). Reverse passing off is the opposite: the producer misrepresents someone else's goods or services as his own." *Id.* Based upon the pleadings, it appears that UEC's claim of false designation of origin is for reverse passing off. Am. Compl. ¶ 182.

To state a false designation claim pursuant to 15 U.S.C. § 1125(a) of the Lanham Act, a plaintiff must allege that: (1) defendant used a false designation of origin; (2) the use of the false designation of origin occurred in interstate commerce in connection with goods or services; (3) the false designation is likely to cause confusion, mistake, or deception as to the origin, sponsorship or approval of plaintiff's goods and services by another person; and (4) plaintiff has been or is likely to be damaged as a result.  *Parker v. Google, Inc.,* 242 F. App'x 833, 838 (3d Cir. 2007); *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir. 1994).  In order to establish the second element, the plaintiff must allege an affirmative act in which the defendant falsely represented itself as the product's owner or creator.  *Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319, 324 (E.D.N.Y. 2003).

UEC fails to allege an affirmative act or false representation in which PDU Cables has "reversed passed off" UEC's product as that of its own or another.  The alleged statement that constitutes the entire basis of the false designation of origin claim states:

> Because Busway Solutions believes so strongly in its superior redesigned tap-off boxes, they decided to offer a two-year warranty on both the tap-off box and the section of Starline T5 busbar it is plugged into.  (Am. Compl. ¶ 92)

According to UEC, the purported warranty offered for the section of Starline T5 busbar that a tap-off box is connected to, if damaged by the use of the tap-off box, will create "the misimpression" with consumers "that PDU Cables and Busway Solutions are an approved alternative source of UEC's Starline® T5 busbar."  Am. Compl. ¶ 181.  The conclusion that UEC reaches here concerning the likelihood of confusion, mistake, or deception is preposterous.  The example above is no different than a third party manufacturer of cell phone cases selling an iPhone case that is guaranteed to protect the phone and if damaged, offering to replace the phone. A reasonable consumer buying an after-market phone case would not assume an affiliation

13

between Apple and the manufacturer or seller of its phone case just because of the promise to replace the iPhone if damaged.

More fundamentally, the false designation of origin claim should be dismissed because PDU Cables makes no representation whatsoever that it or Busway Solutions are the T5 busway's owner or creator.  In fact, the purported advertisement makes clear that the Starline busbar in question is manufactured by a wholly separate manufacturer.  *See* Am. Compl. at Exh. M ("Are Busway Solutions Tap-Off Boxes Compatible with Starline's T5 System Busbars?").

The mere fact that one party offers to warrant, repair, or replace another's product is not sufficient as a matter of law to establish a claim of false designation of origin.  For example, in *Perkins School for the Blind*, the U.S. District Court for the Eastern District of New York rejected a nearly identical claim that defendant's attempt to warrant the plaintiff's product can, on that basis, constitute a false designation of origin:

> Here, [plaintiff] fails to allege that the defendants attempted to pass off [the product] as their own.  While the plaintiff alleges that the defendants have substituted the plaintiff's warranty with an inferior [] warranty [of the defendant], the complaint is devoid of any allegations tending to establish that the defendants misidentified the [product] and tried to pass off the [product] under their own name instead of the plaintiff's name. As such, the plaintiff has failed to allege a claim for reverse palming. Accordingly, the motion to dismiss Count III of the complaint is granted.

274 F. Supp. 2d at 325.  The Court should dismiss UEC's claim of false designation of origin.

### 2. UEC Has Failed to Plead Damages with Specificity for its False Designation of Origin Claim.

With respect to a false designation claim, a plaintiff must plead that he or she "has been or is likely to be damaged as a result" of violation.  *AT&T*, 42 F.3d at 1428.  For the same reasons set forth in Section III.A.2 above, UEC has failed to plead damages under the Lanham

Act with the requisite level of specificity.  This is precisely the type of recitation of the elements that is proscribed by *Twombly* and *Iqbal*.

> **D.     UEC's Claim of Unfair Competition Fails for the Same Reasons UEC's Lanham Act Claim for False Advertising Fails.**

When a claim asserted under the Lanham Act fails as a matter of law, such as a claim for false advertising, a pendant claim of unfair competition asserted under Pennsylvania common law should also fail for the same reasons because of the identical nature of the claims.  *R.J. Ants, Inc. v. Marinelli Enterprises, LLC,* 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011); *Regal Indus., Inc., v. Genal Strap, Inc.*, 1994 U.S. Dist. LEXIS 10193, at *3-4 (E.D. Pa. Jul. 26, 1994).  The factual allegations that support the unfair competition claim are identical to the allegations that comprise the false advertising claim asserted under the Lanham Act – at least with respect to those allegations made against PDU Cables.  Thus, to the extent the Court dismisses the false advertising claim, the Court should likewise dismiss the unfair competition asserted under Pennsylvania common law.

## IV.     CONCLUSION

WHEREFORE, Defendant PDU Cables respectfully requests that this Honorable Court grant its Motion to Dismiss and dismiss Counts I, V, VI, and VII with prejudice as it relates to PDU Cables and dismiss PDU Cables as a party to this action.

Respectfully submitted,

Dated: October 9, 2017

/s/ James L. Beausoleil, Jr.
James L. Beausoleil, Jr., (No. 74308)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Tel: 215.979.1120
Email: jlbeausoleil@duanemorris.com
*Attorneys for Defendant
Engineered Products Co.
d/b/a PDU Cables*